UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

         Plaintiff,

    v.                             File No. 1:12-CR-98

PABLO RAZO FIERRO,

         Defendant.

_____/

Change of Plea Hearing

Before

THE HONORABLE PHILLIP J. GREEN
United States Magistrate Judge
August 31, 2015

APPEARANCES

NILS R. KESSLER               BRITT MORTON COBB
Assistant U.S. Attorney      940 Trust Bldg.
P.O. Box 208                  40 Pearl St., NW
Grand Rapids, MI 49501       Grand Rapids, MI 49503
Attorney for Plaintiff       Attorney for Defendant

Also Present:  Ellen Donohue, Interpreter

Digital audio recording transcribed by:

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                    Grand Rapids, Michigan
 2                                    August 31, 2015
 3                                    10:10 a.m.
 4                      -    -    -
 5
 6                 P R O C E E D I N G S
 7
 8         THE COURT:  Good morning.  Please be seated.
 9         We are here in the matter of United States v. Pablo
10   Razo Fierro.  This is case number 12-CR-98.  Could I have
11   appearance of counsel, please?
12         MR. KESSLER:  Good morning, Your Honor.  Nils
13   Kessler for the United States.
14         THE COURT:  Good morning.
15         MS. COBB:  And good morning, Your Honor.  Britt Cobb
16   with Mr. Fierro.
17         THE COURT:  Good morning.  Good morning, Mr. Fierro.
18         DEFENDANT FIERRO:  Good morning.
19         THE COURT:  Mr. Fierro, Ms. Donohue is here.  She's
20   a court-certified interpreter.  I understand that you don't
21   need her most of the time, but you just want her here kind of
22   on standby.  Is that correct?
23         DEFENDANT FIERRO:  Yes, that's correct.
24         THE COURT:  Do you understand what I'm saying so
25   far?
```

1          DEFENDANT FIERRO:  Yes, sir.

2          THE COURT:  If at any point, Mr. Fierro, you're not

3    sure you understand what I or anyone else has said, would you

4    please kind of just raise your hand and we'll all stop and

5    give Ms. Donohue a chance to translate for you, or if we need

6    to repeat it, we'll do that as well.  Do you understand that?

7          DEFENDANT FIERRO:  Yes.

8          THE COURT:  All right.  Now, Ms. Cobb, I've been

9    advised that your client has expressed an intent to plead

10   guilty to Count 1 pursuant to a plea agreement.  Is that

11   right?

12         MS. COBB:  That's correct, Your Honor.

13         THE COURT:  All right.  Mr. Fierro, before we get

14   into a whole series of things that we need to do if you are

15   going to plead guilty to this charge this morning, I need to

16   make sure that you are of a frame of mind to understand what's

17   going on.  Do you understand that?

18         DEFENDANT FIERRO:  Yes, sir.

19         THE COURT:  And also you may be making what might be

20   the most important decision of your life.  Do you understand

21   that?

22         DEFENDANT FIERRO:  Yes.

23         THE COURT:  Is there anything physically or mentally

24   wrong with you, sir, that would affect your ability either to

25   hear or to think clearly?

1              DEFENDANT FIERRO:  No, sir.

2              THE COURT:  Are you taking any prescription

3    medication?

4              DEFENDANT FIERRO:  Yes, sir.

5              THE COURT:  What are you taking?

6              DEFENDANT FIERRO:  I take some for my high blood

7    pressure.

8              THE COURT:  For your what?

9              DEFENDANT FIERRO:  High blood pressure.

10             THE COURT:  High blood pressure, okay.  Anything

11   else?

12             DEFENDANT FIERRO:  No.

13             THE COURT:  Anything about that medication that

14   affects your ability to think clearly or to hear?

15             DEFENDANT FIERRO:  No, sir.

16             THE COURT:  All right.  Have you had any other drugs

17   or alcohol in the last 24 hours?

18             DEFENDANT FIERRO:  No, sir.

19             THE COURT:  How far did you get in school, Mr.

20   Fierro?

21             DEFENDANT FIERRO:  Okay, I didn't have much

22   education.  I went only four years of school when I was in

23   Mexico.

24             THE COURT:  Okay.  Now, you read and write in

25   Spanish?

1          DEFENDANT FIERRO:  In Spanish, yes.

2          THE COURT:  Do you also read English?

3          DEFENDANT FIERRO:  I do read English.  I don't know

4     how to write, but I can read.

5          THE COURT:  All right.  Has anyone translated the

6     indictment for you into Spanish?

7          DEFENDANT FIERRO:  Yes.

8          THE COURT:  All right.  You've had a chance to

9     review that with an interpreter as well as Ms. Cobb?

10         DEFENDANT FIERRO:  Yes, sir.

11         THE COURT:  All right.  Very well.

12         MS. COBB:  And, Your Honor, just so you know, when I

13    went over the plea agreement with Mr. Fierro at the Newaygo

14    County Jail, we did have an interpreter there as well.  He did

15    not -- he did not interpret or translate the plea agreement

16    line for line simply because Mr. Fierro didn't ask him to, but

17    he was there.  He was available to answer any questions, and

18    so we were able to go over that in Spanish to the extent it

19    was necessary.

20         THE COURT:  All right.  Ms. Cobb, are you satisfied

21    that he was able to understand the terms of the plea

22    agreement?

23         MS. COBB:  Absolutely, yes.

24         THE COURT:  All right.  And do you have any reason

25    to question his competency to proceed this morning?

1          MS. COBB:  None at all, thank you.

2          THE COURT:  All right.  Thank you.

3          Mr. Fierro, you have a right to have this hearing

4    conducted by the district court judge assigned to your case.

5    Your case is assigned to District Judge Robert Holmes Bell.

6    He was appointed by the President of the United States and he

7    serves a term of life.

8          I am a magistrate judge.  I'm appointed by the

9    district judges to serve a term of years.  It's permissible

10   for me to handle this hearing, but only if you consent.  Do

11   you understand that?

12         DEFENDANT FIERRO:  Yes, sir.

13         THE COURT:  Do you agree to have me handle this

14   hearing?

15         DEFENDANT FIERRO:  Yes, sir.

16         THE COURT:  Ms. Cobb, has he signed the consent?

17         MS. COBB:  He has, Your Honor.

18         THE COURT:  All right.  Mr. Kessler, does the

19   government also consent?

20         MR. KESSLER:  We do, Your Honor.

21         THE COURT:  All right.  Thank you.

22         Now, let me go over your rights again with you, Mr.

23   Fierro.  Have you ever heard the expression, "Don't make a

24   federal case out of it?"

25         DEFENDANT FIERRO:  No, I don't.

1           THE COURT:  Well, that's an expression people

2     sometimes use when they think somebody is making a bigger deal

3     out of something than they need to.  I don't know that that's

4     entirely accurate, but there's something to be said for that.

5     In federal court we generally take a little bit longer to do

6     things than they do in state court, and we want to make sure

7     only that you understand what you are doing and that you're

8     making a decision with your eyes wide open.  Do you

9     understand?

10          DEFENDANT FIERRO:  Yes, sir.

11          THE COURT:  Please do not take anything that I say

12    here this morning as an indication that I'm suggesting that

13    you decide one way or the other.  Do you understand that?

14          DEFENDANT FIERRO:  Yes.

15          THE COURT:  I have no dog in this hunt.  I'm only

16    interested in making sure you understand your rights, the

17    nature of the charges, the potential penalties so that when it

18    comes time for you to make a final decision as to whether to

19    plead guilty, you're doing it with your eyes open.  Do you

20    understand that?

21          DEFENDANT FIERRO:  Yes.

22          THE COURT:  All right.  First of all, you have the

23    right to the assistance of legal counsel throughout the

24    proceedings in your case.  If you cannot afford counsel,

25    counsel will be appointed for you at no cost to you.  Do you

1      understand that?

2                      DEFENDANT FIERRO:  Yes.

3                      THE COURT:  Ms. Cobb, are you retained?

4                      MS. COBB:  Yes, I am, Your Honor.

5                      THE COURT:  All right.  Thank you.

6              Ms. Cobb has been hired to represent you, and that's

7      absolutely fine.  That's your right under the Sixth

8      Amendment.  But, Mr. Fierro, you also have the right to have a

9      court-appointed counsel at no cost to you.  So if at any point

10     you were unable to pay for the services of Ms. Cobb, the Court

11     would appoint an attorney at no cost.  Do you understand

12     that?

13                     DEFENDANT FIERRO:  Yes, sir.

14             THE COURT:  So any concern that you may have about

15     paying your lawyer's bills should not come into play in

16     deciding whether to plead guilty.  Do you understand that?

17                     DEFENDANT FIERRO:  Yes, sir.

18             THE COURT:  All right.  Are you satisfied with Ms.

19     Cobb's representation to date?

20                     DEFENDANT FIERRO:  Yes, I do.

21                     THE COURT:  All right.  Very good.

22             You also have the right to remain silent, Mr.

23     Fierro.  You have no obligation to speak to the government.

24     You have no obligation to speak to anyone in law enforcement.

25     You have no obligation to speak to anyone, for that matter.

1    Do you understand that?

2            DEFENDANT FIERRO:  Yes.

3            THE COURT:  If you do make a statement, what you say

4    may be used against you in a later court proceeding.  Do you

5    understand that?

6            DEFENDANT FIERRO:  Yes, sir.

7            THE COURT:  If you continue to plead guilty this

8    morning, you're going to be giving up your right to remain

9    silent.  You'll keep your right to counsel, but you will be

10   giving up your right to remain silent.  Not only will you be

11   giving up that right, but you'll be placed under oath subject

12   to the penalties of perjury and I will be asking you questions

13   that will require you to incriminate yourself in that I'll be

14   asking you what you did that you believe makes you guilty of

15   the crime charged in Count 1.  Do you understand that?

16           DEFENDANT FIERRO:  Yes, sir.

17           THE COURT:  Is it still your intention to plead

18   guilty?

19           DEFENDANT FIERRO:  Yes.

20           THE COURT:  All right.  If we could please place Mr.

21   Fierro under oath.

22   (Defendant Fierro was sworn by the Clerk.)

23           THE COURT:  All right.  Please be seated.  Mr.

24   Fierro, you can remain seated throughout the rest of the

25   proceedings this morning, okay?

1          DEFENDANT FIERRO:  Thank you.

2          THE COURT:  All right.  Now, I've already asked you

3     if you had a chance to review the indictment with Ms. Cobb.

4     I'm going to go ahead and read the first count.  It's not very

5     long, and I'd ask you to follow along with me if you would.

6          DEFENDANT FIERRO:  Okay.

7          THE COURT:  Count 1 reads as follows:  Beginning on

8     or about September 28, 2004, and continuing without

9     interruption until on or about January 21st, 2011, in Muskegon

10    County, in the Western District of Michigan, Southern

11    Division, Pablo Razo Fierro, in a matter within the

12    jurisdiction of the Social Security Administration, having

13    knowledge of the occurrence of an event affecting his

14    continued right to Social Security Disability Benefits

15    payments, concealed and failed to disclose such event with the

16    intent fraudulently to secure payment when no payment was

17    authorized.

18          Specifically, defendant opened Pablo's Tacos, a

19    restaurant in Muskegon, Michigan, and returned to work as the

20    owner and operator.  The defendant thereafter concealed his

21    employment from the Social Security Administration in order to

22    continue to receive and spend DIB payments to which he knew he

23    was not entitled.  This is a violation of Title 42, United

24    States Code, Section 408.

25          Do you think you understand what the grand jury is

1    accusing you of in Count 1, Mr. Fierro?

2              DEFENDANT FIERRO:  Yes, sir.

3              THE COURT:  All right.  In order to be guilty of

4    this particular offense, there are essentially three things

5    that the government would have to prove beyond a reasonable

6    doubt.  First, the government would have to prove that you had

7    knowledge of some event that took place that affected your

8    ability to continue to receive Social Security benefits.

9    Secondly, that you knowingly concealed or withheld that

10   information from the Social Security Administration.  And

11   finally, that you did so with the intent to defraud the Social

12   Security Administration; in other words, with the intent to

13   obtain or continue to receive benefits to which you were not

14   legally entitled.  Do you think you understand the elements of

15   this offense, what the government would have to prove?

16             DEFENDANT FIERRO:  Yes, sir.

17             THE COURT:  All right.  If you are convicted of

18   Count 1, which you will be if you plead guilty, Mr. Fierro,

19   you face a maximum penalty of five years in prison, a fine of

20   up to $250,000, or I think the fine is the greater of either

21   $250,000 or twice the amount of gross gain or loss.  Mr.

22   Kessler, is there any chance of that latter provision kicking

23   in?

24             MR. KESSLER:  Yes, Your Honor.  The gross gain or

25   loss is -- it's in the 200-and-something-thousand-dollar

1      range.  We're still disputing that a little, but that would

2      put it at about 400 to $500,000.

3                  THE COURT:  All right.  Thank you.

4                  Mr. Fierro, this is a little bit complicated, okay,

5      because the statute has two separate provisions on the maximum

6      fine.  Part of it says the maximum fine's $250,000, but

7      there's an exception, and if the amount of -- the gross amount

8      of loss to the government or gain to you is greater, is more

9      than $250,000, then the fine's going to be double that, the

10     maximum fine.  Do you understand that?

11                 DEFENDANT FIERRO:  Yes.

12                 THE COURT:  All right.  You also would be required

13     to pay what's known as a mandatory special assessment of $100,

14     and you face a period of supervised release of up to three

15     years.

16                 Supervised release is a period of time following

17     incarceration in which an individual is subject to certain

18     terms and conditions set by the sentencing judge.  If he or

19     she violates any term or condition, he or she could be

20     returned to prison for up to the full term of supervised

21     release.  In some instances, Mr. Fierro, an individual could

22     spend more time in prison than what was allowed as the maximum

23     penalty for the offense of conviction.  Do you think you

24     understand all these penalties?

25                 DEFENDANT FIERRO:  Yes.

1        THE COURT:  Okay.  In addition, you would be subject

2   to restitution in which the Court would order you to repay the

3   government whatever the losses to the government were.  Do you

4   understand that?

5        DEFENDANT FIERRO:  Yes.

6        THE COURT:  All right.  Now, let me talk to you

7   about something that the Congress did in 1984.  Congress

8   passed a statute called the Sentencing Reform Act.  That

9   statute did a number of things, one of which was to create

10  what's known as the Sentencing Guidelines Commission.  That

11  commission is charged with developing and maintaining what's

12  known as the federal sentencing guidelines.  Every year they

13  come out with a new manual.  I think this is still the current

14  manual.  I'm holding up the 2014 edition which appears to me

15  to be lavender or purple in color.  Has Ms. Cobb talked to you

16  about the sentencing guidelines?

17       DEFENDANT FIERRO:  Yes.

18       THE COURT:  All right.  Well, that's perfectly

19  appropriate for her to do that.  I'm going to very generally

20  describe to you how the guidelines work just to make sure that

21  you understand the system.

22            Under the guidelines two things are -- Judge Bell,

23  who will be your sentencing judge, would have to do two

24  things, basic things.  One is determine what's known as your

25  total offense level, and secondly, to determine your criminal

1    history category.

2          The total offense level is a number, and that

3    process begins with what's known as a base offense level,

4    which is usually linked to the offense of conviction, and then

5    there may be certain aggravating or mitigating factors that

6    increase or decrease that number.  An aggravating factor is

7    something that goes against you, okay, which would increase

8    the number.  A mitigating factor is something in your favor

9    which would reduce the number.

10         An example of a mitigating factor is what's known as

11   credit for acceptance of responsibility.  If an individual

12   pleads guilty and is otherwise qualified for it, then the

13   judge, the sentencing judge can reduce their base -- their

14   offense level by two levels, and if their adjusted offense

15   level is 16 or greater and if the government asks the Court to

16   do so, then the judge can add an additional level off for a

17   total of three levels off reduction.  Do you understand that?

18              DEFENDANT FIERRO:  Yes, sir.

19              THE COURT:  That's an example of a mitigating

20   factor.  Once the base offense level is determined and the

21   judge calculates any aggravating or mitigating factors, then

22   the judge comes to a final level, a number, which is known as

23   the total offense level.

24         Then Judge Bell is going to determine your criminal

25   history category.  There are six criminal history categories.

1    It's based on a point system.  And if you have any criminal

2    history, and I don't know whether you do, but if you do, then

3    the Probation Department will go through and make a

4    recommendation as to what your criminal history category is

5    based on points that are linked to the nature of the

6    conviction, the sentences, how long ago they occurred, things

7    like that.  Once the judge has added up all the applicable

8    points that apply to a criminal history category, that will

9    tell him which criminal history category you are in, I through

10   VI.

11           Once Judge Bell knows that, then he will go to a

12   sentencing guidelines table, an example of which is in the

13   back cover of this sentencing guidelines manual.  He'll go

14   down vertically to the point where it comes to your total

15   offense level.  Then he'll go across horizontally to the

16   column that contains your criminal history category.  That

17   will then tell Judge Bell what your sentencing guidelines

18   range is in months.  Do you understand that?

19           DEFENDANT FIERRO:  Yes, sir.

20           THE COURT:  Now, I'm sure Ms. Cobb has talked to you

21   about what she thinks your sentencing guidelines may be in

22   this case.  Is that right?

23           DEFENDANT FIERRO:  Yes.

24           THE COURT:  Again, that's perfectly appropriate for

25   her to do that.  But do you understand that Judge Bell and

1    only Judge Bell can ultimately decide what your sentencing

2    guidelines are?

3              DEFENDANT FIERRO:  Yes.

4              THE COURT:  Do you understand that if Judge Bell

5    disagrees or reaches a decision that's different than what you

6    or Ms. Cobb thinks it should be, that's not a basis for you to

7    withdraw from your plea?

8              DEFENDANT FIERRO:  Yes.

9              THE COURT:  If Judge Bell sentences you above the

10   sentencing guidelines all the way up to the five-year

11   statutory maximum, that also is not a basis to withdraw from

12   your plea.  Do you understand that?

13             DEFENDANT FIERRO:  Yes, sir.

14             THE COURT:  Do you understand that while Judge Bell

15   is required to accurately calculate your sentencing

16   guidelines, he's not obligated to sentence you within those

17   guidelines?

18             DEFENDANT FIERRO:  Yes.

19             THE COURT:  Now, if you plead guilty, a presentence

20   report will be prepared by the Probation Department.  The

21   first one that will come out is known as an initial

22   presentence report.  That report will contain a great deal of

23   information about your background, about the alleged offense

24   conduct, about any criminal history that you may have, and it

25   will contain the Probation Department's recommendations as to

1    which sentencing guidelines provisions apply and what your

2    criminal history category should be.

3              You and Ms. Cobb will have an opportunity to review

4    that report to make suggested changes, additions or

5    corrections to that report.  You'll also have the opportunity

6    to object if you don't agree with one of the sentencing

7    guidelines or criminal history category recommendations as

8    made by the Probation Department.  Do you understand that?

9              DEFENDANT FIERRO:  Yes, sir.

10             THE COURT:  Ms. Cobb and Mr. Kessler will then have

11   an opportunity to sit down with the Probation Department

12   person who wrote the report and discuss their respective views

13   on the report.  If Ms. Cobb is successful in convincing the

14   Probation Department to make the changes that you and she

15   thinks should be made, then that's good.  Then you'll proceed

16   to sentencing on that basis.  The government can still make

17   objections if it wants to just like you can.

18             It's important for you to understand, Mr. Fierro,

19   that if the Probation Department does not make recommendations

20   that you believe should be made or you disagree with the

21   recommendations that are being made, that you can persist in

22   your objections to those, but you need to bring those

23   objections to the attention of Judge Bell at sentencing.  Do

24   you understand that?

25             DEFENDANT FIERRO:  Yes.

1              THE COURT:  All right.  Now, another thing that

2    Congress did in the Sentencing Reform Act is to abolish

3    parole.   In the state system, if an individual is convicted of

4    a crime, then he or she is generally sentenced to what's known

5    as an indeterminate or range sentence; for example, five to

6    ten years.  After that individual serves the minimum term of

7    sentence, five years, for example, then they're generally

8    eligible for what's known as parole, which is release from

9    prison prior to the completion of the entire sentence.  We

10   don't have parole in the federal system anymore.  Do you

11   understand that?

12             DEFENDANT FIERRO:  Yes.

13             THE COURT:  So if you plead guilty and you are

14   sentenced to prison by Judge Bell, you should expect to serve

15   the full term imposed by Judge Bell minus any credit for good

16   time served that would be computed by the Bureau of Prisons.

17   Do you understand that?

18             DEFENDANT FIERRO:  Yes.

19             THE COURT:  Now, I've talked to you about a number

20   of the penalties that are associated with Count 1 if you are

21   convicted.   There are other adverse consequences that may come

22   to you if you plead guilty to this charge, Mr. Fierro.  You

23   may be deprived of certain civil rights, for example the right

24   to vote, the right to hold office, the right to serve on a

25   jury, the right to possess firearms.  Do you understand that?

```
 1                    DEFENDANT FIERRO:  Yes, sir.
 2                    THE COURT:  Is he a U.S. citizen?  What is his --
 3                    DEFENDANT FIERRO:  Yes.
 4                    MS. COBB:  He is, Your Honor.
 5                    THE COURT:  He is, all right.  Is he on probation or
 6      parole?
 7                    MS. COBB:  No.
 8                    THE COURT:  All right.  Mr. Fierro, you pled not
 9      guilty to the charges in the indictment and you have the right
10      to continue to persist in a not guilty plea and to go to
11      trial, and I want to talk to you about what rights you have if
12      you choose to go to trial.  That would be a trial by jury, a
13      jury of your peers.  You have the right to the assistance of
14      legal counsel.  Ms. Cobb will represent you throughout that
15      trial if you choose to go to trial.
16                    You have the right to have at least 30 days to
17      prepare for that trial.  You have the right through Ms. Cobb
18      to confront and cross-examine any witness the government calls
19      against you.  You have the right to present evidence and call
20      witnesses if you choose, but you're not required to.  If you
21      want a witness to testify and that person is unwilling to come
22      voluntarily, the Court will order them to appear.
23                    You have the right not to be compelled to
24      incriminate yourself at trial.  What that means is if you
25      choose to go to trial and you do not wish to testify, no one
```

1     can compel you to testify, and if you choose not to testify,

2     Judge Bell will tell the jury that they cannot hold the fact

3     that you did not testify against you.  But you also have the

4     right to testify.  If you choose to go to trial and you want

5     to testify, no one could prevent you from testifying.  Do you

6     understand that?

7             DEFENDANT FIERRO:  Yes, sir.

8             THE COURT:  All right.  You are presumed innocent

9     and you remain under that presumption unless and until the

10    government proves you guilty beyond a reasonable doubt, and if

11    you go to trial, Judge Bell will tell the jury that.  Do you

12    understand that?

13            DEFENDANT FIERRO:  Yes.

14            THE COURT:  Now, if you plead guilty, Mr. Fierro,

15    you'll be giving up all your rights that are associated with

16    going to trial that I've discussed with you with the exception

17    of the right to legal counsel, you'll keep that, because there

18    won't be any trial.  All that will be left is for Judge Bell

19    to sentence you.  Do you understand that?

20            DEFENDANT FIERRO:  Yes, sir.

21            THE COURT:  Do you think you understand all of your

22    rights, the nature of the charge in Count 1, and the potential

23    penalties if you're convicted of that charge?

24            DEFENDANT FIERRO:  Yes, I do.

25            THE COURT:  Has anyone threatened you to get you to

1    plead guilty, Mr. Fierro?

2              DEFENDANT FIERRO:  No, sir.

3              THE COURT:  Anybody putting pressure or coercion on

4    you?

5              DEFENDANT FIERRO:  No, sir.

6              THE COURT:  Has anybody made any promise to you

7    other than in the plea agreement?

8              DEFENDANT FIERRO:  No, sir.

9              THE COURT:  Are you pleading guilty because it's

10   your decision to plead guilty?

11             DEFENDANT FIERRO:  Yes, sir.

12             THE COURT:  Have you had an adequate opportunity to

13   think about it and to discuss it with Ms. Cobb?

14             DEFENDANT FIERRO:  Yes.

15             THE COURT:  All right.  Let's take a look at the

16   plea agreement.  First let's go to the last page, Page 8.

17   There appears to be two signatures on this page.  Is that

18   right, Mr. Fierro?

19             DEFENDANT FIERRO:  Yes, sir.

20             THE COURT:  And one is Ms. Cobb, and is the other

21   one yours?

22             DEFENDANT FIERRO:  Yes.

23             THE COURT:  Did you sign this plea agreement on

24   August 18th of this year?

25             DEFENDANT FIERRO:  Yes, sir.

```
 1              THE COURT:  All right.  Now, Ms. Cobb told me that
 2    you understood this plea agreement.  Do you agree with her?
 3              DEFENDANT FIERRO:  Yes.
 4              THE COURT:  Did you read it carefully before you
 5    signed it?
 6              DEFENDANT FIERRO:  Yes, I do.
 7              THE COURT:  Did you discuss it with Ms. Cobb?
 8              DEFENDANT FIERRO:  Yes.
 9              THE COURT:  Do you believe that before you signed
10    the plea agreement you understood all the terms and provisions
11    in this plea agreement?
12              DEFENDANT FIERRO:  Yes, sir.
13              THE COURT:  I'm going to read to you the paragraph
14    immediately above your signature and I'd like you to follow
15    along silently, please.
16              DEFENDANT FIERRO:  Okay.
17              THE COURT:  "I have read this agreement and
18    carefully discussed every part of it with my attorney.  I
19    understand the terms of this agreement and I voluntarily agree
20    to those terms.  My attorney has advised me of my rights, of
21    possible defenses, of the sentencing provisions, and of the
22    consequences of entering into this agreement.  No promises or
23    inducements have been made to me other than those contained in
24    this agreement.  No one has threatened or forced me in any way
25    to enter into this agreement.  Finally, I am satisfied with
```

1    the representation of my attorney in this matter."

2             Did I read that correctly, Mr. Fierro?

3             DEFENDANT FIERRO:  Yes, sir.

4             THE COURT:  Was all of that true when you signed the

5    plea agreement?

6             DEFENDANT FIERRO:  Yes.

7             THE COURT:  Is all of that still true?

8             DEFENDANT FIERRO:  Yes, sir.

9             THE COURT:  All right.  I'm going to ask you about

10   some of the provisions in the plea agreement, but not all of

11   them.

12            All right.  Let's turn to Paragraph 4 on Page 2,

13   please.  Now, this says that you agree to make full

14   restitution for any losses to the government resulting from

15   your alleged Social Security fraud.  Do you understand that?

16            DEFENDANT FIERRO:  Yes, sir.

17            THE COURT:  And that's not limited to the count of

18   conviction.  In other words, if the government can prove to

19   Judge Bell that the government suffered losses associated with

20   your Social Security fraud that go beyond Count 1, they may

21   ask the judge to order you to repay that as well.  Do you

22   understand that?

23            DEFENDANT FIERRO:  Yes.

24            THE COURT:  And you're agreeing to do that.  Do you

25   understand that?

1          DEFENDANT FIERRO:  Yes, sir.

2          THE COURT:  All right.  Now, Paragraph 5 has the

3    factual basis of guilt.  We're going to skip over that for

4    right now.

5          I want to turn to Paragraph 6 which has the United

6    States Attorney's Office's promises to you.  First of all, in

7    Paragraph 6-A the government is agreeing to move to dismiss

8    Count 2 as well as the associated forfeiture allegation at the

9    time of the sentencing.  Do you understand that?

10          DEFENDANT FIERRO:  Yes, sir.

11          THE COURT:  In Paragraph 6-B it talks about

12    acceptance of responsibility.  Remember that was the example

13    of a mitigating factor I talked to you about a little while

14    ago?

15          DEFENDANT FIERRO:  Yes.

16          THE COURT:  And here the government is saying that

17    it's not going to oppose your request for two levels off for

18    acceptance of responsibility as long as you qualify, but the

19    government reserves the right to still object to you getting

20    that if the government believes that you've acted

21    inconsistently with that.  Do you understand that?

22          DEFENDANT FIERRO:  Yes, sir.

23          THE COURT:  Moreover, the government has agreed that

24    if you are eligible for acceptance of responsibility and if

25    your adjusted offense level is 16 or greater, the government

1   agrees to ask Judge Bell to give you an additional level off.

2   Do you understand that?

3          DEFENDANT FIERRO:  Yes, sir.

4          THE COURT:  In Paragraph 6-C the government is

5   agreeing not to prosecute you for any other criminal conduct

6   relating to this case, but the government is not agreeing to

7   not prosecute you for criminal tax violations.  Do you

8   understand that?

9          DEFENDANT FIERRO:  Yes, sir.

10         THE COURT:  No one is suggesting that you've

11  committed any, but if you have, this plea agreement doesn't

12  protect you from that.  Do you understand that?

13         DEFENDANT FIERRO:  Yes.

14         THE COURT:  This plea agreement also does not

15  protect you from prosecution for anything you may have done

16  after you signed the plea agreement.  Do you understand that?

17         DEFENDANT FIERRO:  Yes, sir.

18         THE COURT:  All right.  Paragraph 7 talks about the

19  sentencing guidelines.  We've already discussed that.

20         In Paragraph 8 both you and the government has

21  acknowledged that neither one of you have agreed to any

22  particular sentencing guidelines.  Do you understand that?

23         DEFENDANT FIERRO:  Yes, sir.

24         THE COURT:  So both you and the government are free

25  to argue for whatever guideline range each of you believes is

1    appropriate.  Do you understand?

2            DEFENDANT FIERRO:  Yes.

3            THE COURT:  Paragraph 9 talks about the waiver of

4    constitutional rights.  We've already done that.

5            I'd like to take a look at Paragraph 10.  This is a

6    significant concession that you are making, Mr. Fierro.  This

7    is a waiver of what's known as appellate or collateral attack

8    rights, and I want to make sure you understand what you're

9    agreeing to here.  But before we do that, let me make sure you

10    understand the difference between a direct appeal and what's

11    known as a collateral attack.  This gets a little difficult

12    sometimes for people to understand, okay?  Even lawyers

13    sometimes and judges have a little difficulty understanding

14    this, so let me see if I can help you.

15            A direct appeal occurs if someone is convicted of a

16    crime and sentenced, they can go directly to the Court of

17    Appeals.  In this district we are covered by what's known as

18    the Sixth Circuit Court of Appeals which sits in Cincinnati,

19    Ohio.  So if you were convicted and you believed that Judge

20    Bell -- there was something wrong with your conviction or your

21    sentence, on a direct appeal you could go to the Sixth Circuit

22    and ask the Sixth Circuit to correct it.

23            If the Sixth Circuit didn't do what you wanted, then

24    you could go to the Supreme Court of the United States and ask

25    the Supreme Court to take your case.  Maybe they'll take it;

1    maybe they won't.  If they take it and they decide it, then

2    that's generally the end of your direct appeal.  If they don't

3    take it, that's the end of your direct -- what's known as a

4    direct appeal.  Do you understand that?

5             DEFENDANT FIERRO:  Yes.

6             THE COURT:  Once the direct appeal is exhausted,

7    then an individual normally has another option available to

8    them to challenge the conviction or sentence, and that's

9    what's known as a collateral attack, sometimes referred to as

10   a habeas corpus petition.  Habeas corpus is Latin.  It means

11   you have the body, okay, and it's a civil lawsuit in which

12   someone brings the action claiming that they're being held in

13   custody in violation of their constitutional rights and

14   they're asking the Court to order their release.

15             It's called a collateral attack because it's kind of

16   a sideways way of coming about challenging the conviction.  As

17   I said, it's a separate civil lawsuit.  It's generally filed

18   before the same judge who sentenced you.  In this case it

19   would be Judge Bell.  But you'd be able to bring that separate

20   lawsuit alleging any constitutional violation that you thought

21   occurred in your conviction or your sentence.  Do you

22   understand that?

23             DEFENDANT FIERRO:  Yes, sir.

24             THE COURT:  As a general proposition, in this

25   paragraph of the plea agreement you're giving up your rights

1    to both a direct and collateral attack, a direct appeal and

2    collateral attack, with certain exceptions.  Do you understand

3    that?

4                   DEFENDANT FIERRO:  Yes, sir.

5                   THE COURT:  And I'm going to talk to you now about

6    what those exceptions are.  The first exception is if Judge

7    Bell gave you a sentence that was greater than the five-year

8    statutory maximum.  You could still appeal that.

9                   The second exception is if Judge Bell were to

10   sentence you on some unconstitutional factor; for example,

11   your race, religion, national origin or gender.  Okay?  Do you

12   understand that?

13                  DEFENDANT FIERRO:  Yes.

14                  THE COURT:  The third exception is if you believe

15   that Judge Bell incorrectly calculated your sentencing

16   guideline range and you objected at the sentencing.  Remember

17   when I talked to you about the process and how important it is

18   if you believe that the presentence report incorrectly

19   calculates your guidelines, you need to raise that issue with

20   Judge Bell so he can decide it.  Remember that?

21                  DEFENDANT FIERRO:  Yes.

22                  THE COURT:  So this exception is saying that if you

23   do that, if you raise that issue with Judge Bell and he rules

24   against you, you can appeal that.  Do you understand that?

25                  DEFENDANT FIERRO:  Yes.

1              THE COURT:  All right.  The next exception is if

2   Judge Bell gives you a sentence above the sentencing

3   guidelines, okay?  And here what happens is Judge Bell

4   calculates what your sentencing guidelines range is, and

5   remember I told you the law allows him to sentence you to

6   anything from zero to five years.  He's not bound by the

7   sentencing guidelines.  Do you understand that?

8              DEFENDANT FIERRO:  Yes, sir.

9              THE COURT:  So this exception says if Judge Bell

10   sentences you above the sentencing guidelines, then you can

11   appeal, but all you can appeal is the reasonableness of the

12   sentence.  Do you understand that?

13              DEFENDANT FIERRO:  Yes, sir.

14              THE COURT:  The next exception is if the guilty plea

15   which we're doing here today is involuntary or unknowing,

16   okay?  It would be involuntary if somebody were coercing you

17   or putting pressure on you, if it was not your free choice.

18   Do you understand that?

19              DEFENDANT FIERRO:  Yes.

20              THE COURT:  Remember all those questions I asked you

21   about that?

22              DEFENDANT FIERRO:  Yes, sir.

23              THE COURT:  Okay.  And an unknowing plea is one that

24   you did without understanding what your rights are, if you

25   didn't understand the nature of the charges, you didn't

1   understand the penalties.  That's why I take so much time to

2   make sure you understand those things.  Do you see what I'm

3   saying?

4           DEFENDANT FIERRO:  Yes.

5           THE COURT:  But if either of those things were true,

6   if your plea was involuntary or unknowing, then you could

7   still appeal that or bring a collateral attack.  Do you

8   understand?

9           DEFENDANT FIERRO:  Yes.

10          THE COURT:  And then the last thing would be is if

11  you believed that Ms. Cobb in representing you was

12  ineffective.  Do you understand that?

13          DEFENDANT FIERRO:  Yes.

14          THE COURT:  But other than those exceptions, you're

15  giving up your right to appeal and to bring a collateral

16  attack.  Do you understand that?

17          DEFENDANT FIERRO:  Yes, sir.

18          THE COURT:  And if you file an appeal and it doesn't

19  fit in one of these exceptions, the government's going to ask

20  the Court of Appeals to dismiss your appeal, and you should

21  expect that that's what will happen.  Do you understand that?

22          DEFENDANT FIERRO:  Yes.

23          THE COURT:  All right.  In the next paragraph you're

24  giving up your right to bring what's known as a FOIA request.

25  FOIA stands for Freedom of Information Act, and under that

1    statute you would normally have the right to ask the

2    government to disclose to you certain information or documents

3    about your case that it has in its possession.  But here you

4    are agreeing to give up your right to make any requests like

5    that.  Do you understand that?

6              DEFENDANT FIERRO:  Yes.

7              THE COURT:  Not only are you agreeing that you won't

8    make such a request, but you're agreeing that no one will do

9    it on your behalf.  Do you understand that?

10             DEFENDANT FIERRO:  Yes.

11             THE COURT:  All right.  Paragraph 12 makes it clear

12    the Court is not a party to this agreement.  That's very

13    true.  You see three signatures on this plea agreement:  the

14    prosecutor, yours, and Ms. Cobb.  Is that right?

15             DEFENDANT FIERRO:  Right.

16             THE COURT:  Okay.  Nowhere on here do you see Judge

17    Bell's signature, do you?

18             DEFENDANT FIERRO:  No.

19             THE COURT:  All right.  Well, it's important for you

20    to understand that Judge Bell is not bound by any provision in

21    this plea agreement.  Do you understand that?

22             DEFENDANT FIERRO:  Yes, sir.

23             THE COURT:  So if at sentencing he decides to

24    sentence you in a manner inconsistent with any of these terms,

25    if he decides not to do something that's a term of this plea

1    agreement, that's not a basis for you to withdraw from your

2    plea.  Do you understand that?

3              DEFENDANT FIERRO:  Yes.

4              THE COURT:  Paragraph 13 says that the agreement's

5    limited to the parties.  Mr. Kessler represents the United

6    States here in the Western District of Michigan, but he cannot

7    bind another district or another government agency.  Do you

8    understand that?

9              DEFENDANT FIERRO:  Yes.

10             THE COURT:  Paragraph 14 talks about the

11   consequences of breach.  Breach is a term used in contract

12   law, Mr. Fierro, and the term breach means to break a promise

13   that's made in a contract.  This plea agreement is a

14   contract.  It's a contract between you and the United States

15   Attorney's Office.

16             If you break any of the promises that you made in

17   this contract, one of two things could happen in essence.

18   One, the government could ask Judge Bell to tear up the plea

19   agreement, tear up your plea, and put you back at square one

20   where you are today.  Do you understand that?

21             DEFENDANT FIERRO:  Yes.

22             THE COURT:  The other thing the government could do

23   is ask Judge Bell to keep your plea, but deprive you of

24   certain benefits you would have otherwise received under the

25   plea agreement.  Do you understand that?

1          DEFENDANT FIERRO:  Yes.

2          THE COURT:  The last paragraph, Paragraph 15,

3    indicates that this is the complete agreement, meaning

4    everything that the government has agreed to, every

5    understanding that you have with the government is contained

6    in the eight pages of this plea agreement.  Is that correct?

7          DEFENDANT FIERRO:  That's correct.

8          THE COURT:  Has anybody made any promises to you or

9    suggested anything that anyone will do for you that's not in

10   this plea agreement?

11         DEFENDANT FIERRO:  No, sir.

12         THE COURT:  All right.  Ms. Cobb, are you aware of

13   any side agreements?

14         MS. COBB:  I'm not, Your Honor.

15         THE COURT:  Mr. Kessler, are there any?

16         MR. KESSLER:  There are not, Your Honor.

17         THE COURT:  All right.  Thank you.  Mr. Kessler, is

18   there anything about the plea agreement that you would like me

19   to cover that I haven't?

20         MR. KESSLER:  No, Your Honor.

21         THE COURT:  All right.  Ms. Cobb, anything on your

22   behalf?

23         MS. COBB:  No, thank you.

24         THE COURT:  All right.  Now we're down to zero hour,

25   Mr. Fierro.  This is the time when you ultimately have to

1    decide whether to plead guilty.  But before I ask you, do you

2    have any questions about anything I've discussed with you?

3            DEFENDANT FIERRO:  No, sir.

4            THE COURT:  All right.  Mr. Fierro, how do you plead

5    to Count 1 in the indictment charging you with Social Security

6    fraud?

7            DEFENDANT FIERRO:  I plead guilty.

8            THE COURT:  All right.  Now, Mr. Fierro, in federal

9    court we cannot accept a guilty plea unless we're satisfied

10    that the person in fact is guilty.  Accordingly, we do what's

11    known as a factual basis to establish that.  So I need to ask

12    you some questions now to establish a factual basis for your

13    guilty plea to Count 1.

14            But let's take a look at the plea agreement,

15    Paragraph 5, which is on -- begins on Page 2.  Are you there?

16            DEFENDANT FIERRO:  Yes.

17            THE COURT:  All right.  Now, this says that in 1996

18    you applied for and began receiving Social Security payments.

19    Is that right?

20            DEFENDANT FIERRO:  That's correct.

21            THE COURT:  Now, were these Disability Income

22    Benefits?  In other words, do you know what DIB is or

23    Disability Income Benefits are?

24    (The question was translated by the Interpreter.)

25            DEFENDANT FIERRO:  Yes.

1          THE COURT:  All right.  In other words, you began

2    receiving Social Security benefits because you became

3    disabled; is that right?

4          DEFENDANT FIERRO:  Yes, sir.

5          THE COURT:  What was your disability?

6          DEFENDANT FIERRO:  I hurt my back.

7          THE COURT:  Okay.  Now, at the time you began

8    receiving disability benefits, did you agree to tell the

9    Social Security Administration if circumstances changed and

10   you were able to return to work?

11         DEFENDANT FIERRO:  Yes, I did.

12         THE COURT:  All right.  Now, it says here that in

13   2004, that you opened a restaurant called Pablo's Tacos.  Is

14   that right?

15         DEFENDANT FIERRO:  That's correct.

16         THE COURT:  And where is that located?

17         DEFENDANT FIERRO:  Muskegon, Michigan.

18         THE COURT:  Okay.  Now, when you opened that in 2004

19   were you actively involved in running the business?

20         DEFENDANT FIERRO:  Yes, sir.

21         THE COURT:  Did you get an income from that

22   business?

23         DEFENDANT FIERRO:  Well, I never get paid, but I was

24   using the money for everything, you know.

25         THE COURT:  All right.  So you got financial benefit

```
 1        from it; is that right?

 2                    DEFENDANT FIERRO:  Yes, that's correct.

 3                    THE COURT:  Okay.  Now, it says -- and let's look

 4        specifically at Count 1.  Count 1 has some dates in here.  It

 5        says beginning September 28, 2004.  Is that about the time you

 6        opened Pablo's Tacos?

 7                    DEFENDANT FIERRO:  That's correct.

 8                    THE COURT:  Okay.  Then it goes on, it says until

 9        January 21st of 2011.  What happened in January of 2011?

10                    DEFENDANT FIERRO:  Okay.  May -- can I say in

11        Spanish?

12                    THE COURT:  Of course.

13                    DEFENDANT FIERRO:  Okay.  Thank you.

14                    DEFENDANT FIERRO (Through Interpreter):  The Social

15        Security called me and they said that I was working.

16                    THE COURT:  Okay.

17                    DEFENDANT FIERRO:  I agreed with them.  I said yes,

18        I was working.  Instead of going through the whole process, I

19        went to Mexico because I was scared.  The attorney scared me

20        that they were going to give me 20 years of jail.

21                    THE COURT:  Okay.  Let me stop you there, Mr.

22        Fierro.  When you say go through the whole process, what do

23        you mean by that?

24                    DEFENDANT FIERRO:  To keep coming through Social

25        Security, to keep doing the whole investigation with them.
```

1          THE COURT:  All right.  Now, when you began

2     operating Pablo's Tacos restaurant, did you understand that

3     you weren't entitled to continue to receive Social Security

4     Disability Benefits?

5          DEFENDANT FIERRO:  Yes.  I knew that what I was

6     doing was wrong.

7          THE COURT:  Okay.  And did you continue to receive

8     those Social Security Disability Benefits after you opened the

9     restaurant?

10         DEFENDANT FIERRO:  Yes.

11         THE COURT:  Did you continue receiving them until

12     January of 2011?

13         DEFENDANT FIERRO:  Yes.

14         THE COURT:  All right.  Did you understand that you

15     had an obligation to tell the Social Security Administration

16     that you had been working even before they contacted you?

17         DEFENDANT FIERRO:  Yes.  I understood that I had to

18     notify them and that what I was doing was wrong.

19         THE COURT:  Okay.  Why didn't you notify them?

20         DEFENDANT FIERRO:  Because I needed to still have

21     the insurance because it was giving me a lot of medicine,

22     medicine for pain.

23         THE COURT:  All right.  So is it the case that you

24     didn't contact the Social Security Administration when you

25     opened the restaurant because you didn't want them to stop

1    giving you the disability payments?

2              DEFENDANT FIERRO:  Yes.

3              THE COURT:  Mr. Kessler, is there anything else that

4    you'd like to cover?

5              MR. KESSLER:  No, Your Honor.  I think you've

6    covered all the elements.

7              THE COURT:  All right.  Ms. Cobb, are you satisfied

8    that we have a factual basis?

9              MS. COBB:  I certainly am, Your Honor, thank you.

10             THE COURT:  All right.  Very good.

11             I find that Mr. Fierro understands the nature of the

12   charge in Count 1 and the penalties provided by law for that

13   count.  I find that his plea is made knowingly and with full

14   understanding of each of the rights I explained to him.  I

15   find that his plea is voluntary, free of any force, threats or

16   promises apart from the plea agreement.  I also find that his

17   plea has a sufficient factual basis.

18             I defer acceptance of the plea agreement to Judge

19   Bell who will make that decision after he's had an opportunity

20   to review the presentence report.  I will recommend to Judge

21   Bell that he accept your plea, Mr. Fierro, and adjudicate you

22   guilty.  Mr. Fierro, you have 14 days from the time of the

23   issuance of my recommendation which will come out today to

24   make any objections, and if you want to object, Ms. Cobb will

25   handle that for you.  Do you understand that?

1        DEFENDANT FIERRO:  Yes, sir.

2        THE COURT:  Mr. Fierro, Judge Bell's case manager

3    will be scheduling a sentencing hearing for you probably in

4    about 90 days.  The reason it goes that far out is because the

5    Court needs to allow an opportunity for the Probation

6    Department to conduct its presentence investigation, write the

7    report, give you and Ms. Cobb an opportunity for input.  We

8    want to make sure that at the time of your sentencing Judge

9    Bell has all the information he needs to make a decision in

10   your case.  Do you understand that?

11       DEFENDANT FIERRO:  Yes, sir.

12       THE COURT:  All right.  Do you have any questions at

13   this time, Mr. Fierro?

14       DEFENDANT FIERRO:  No, sir.

15       THE COURT:  All right.  Mr. Kessler, is there

16   anything else we need to take up at this time?

17       MR. KESSLER:  No, Your Honor, thank you.

18       THE COURT:  All right.  Ms. Cobb, anything?

19       MS. COBB:  No, thank you, Your Honor.

20       THE COURT:  All right.  Mr. Fierro, I wish you well.

21       DEFENDANT FIERRO:  Thank you.

22       THE COURT:  We are adjourned.

23         (Proceedings concluded at 10:49 a.m.)

24

25

CERTIFICATE OF REPORTER

I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript was prepared by me.

/s/   Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503