UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,                     No. 1:12-CR-98

v.                                     Hon. Robert Holmes Bell

PABLO RAZO FIERRO,

        Defendant.

---

**DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD VARIANCE**

---

This memorandum and motion for downward variance is submitted for Mr. Fierro's sentencing on December 9, 2015, at 8:45 a.m.

On August 31, 2015, Mr. Fierro pled guilty to social security fraud, an offense carrying a maximum of five years imprisonment.

<u>THE PRESENTENCE INVESTIGATION REPORT</u>

The defense has no objections to the guideline computations in the Presentence Investigation Report (PIR). The PIR accurately computes the criminal history score as zero, leading to a criminal history category of I, the total offense level as 13 and the resulting guideline range of 12-18 months. PIR, ¶¶ 39, 22-23, 64. This is within Zone C of the Sentencing Table and therefore the alternatives offered by U.S.S.G. § 5C1.1(d) are available. PIR, ¶ 64. Mr. Fierro has been in custody since his arrest on June 30, 2015. At the time of sentencing, he will have 163 days of presentence confinement served.

## CIRCUMSTANCES OF THE OFFENSE

The PIR also accurately summarizes the facts of the case and the background of Mr. Fierro. Mr. Fierro is a naturalized United States citizen. He and his wife moved their family to Muskegon, Michigan in 1978. PIR ¶ 42. Their three daughters were born between 1973 and 1982. PIR ¶ 44. In approximately 1984, Mr. Fierro started working two industrial-type jobs in order to support his family and to be able to send his daughters to Catholic school. He worked 80 hours per week between 1984 and 1992 at Eagle Ottawa Leather Company and Sealed Power in Muskegon. PIR ¶¶ 56-57. He also worked intermittently during those years, and later years, at El Camino Tacos in Muskegon. PIR ¶ 58.

In 1992, he suffered a serious back injury while working at Eagle Ottawa. He was no longer able to tolerate working as much as he had been due to the low back injury. PIR ¶ 9. He stopped working at Sealed Power in 1992 as a result, but Eagle Ottawa accommodated him with part-time work that he could reasonably perform until 1995, when it was no longer able to accommodate his needs. *Id.* Mr. Fierro applied for and began receiving Social Security Disability benefits around this time, the first payments being made in 1996. He received them until 1998, and then litigation over the extent of his injury and ability to work ensued. PIR ¶ 10. As a result, he received no disability payments after the benefits terminated in 1998 until 2003, when the litigation was finally resolved in his favor and he received a lump sum back payment for those years. *Id.*

Medical records and testimony from the civil litigation indicate that following his injury (summarized in the investigatory reports in this case), Mr. Fierro was prescribed a number of pain medications and that his use of those medications continued for years. Likewise, medical records and testimony from the civil litigation reveal that Mr. Fierro became severely depressed during these

years because of the pain and the lack of self-esteem he felt due to his inability to work.

During the time of the civil litigation - from roughly 1999 through 2003 - Mr. Fierro worked full time at El Camino Tacos. This was out of necessity. He was not receiving social security payments during that time. He found that if he took enough pain medication and laid down to rest his back periodically throughout the day, he could manage to work. Being able to work again also gradually improved his mental health, at least ostensibly. We say ostensibly because the only reason he was able to work so much was because he was taking so much pain medication. He traded his depression - due to not working - to a painkiller addiction - allowing him to work. By the time the civil litigation was resolved in his favor, he had developed an expensive prescription drug addiction. PIR ¶ 52. He opened Pablo's Tacos and worked long days. As his tolerance to the pain medication increased, so did the expense of the drugs and he began to rely on the prescription drug benefit aspect of the social security disability benefit even more so than the disability payment.

This is the vicious cycle that has landed Mr. Fierro before the Court. He took a lot of pain medication in order to work and then fraudulently took government benefits in order to pay for that medication so that he could continue to work. His judgment about the opiate use and working while receiving benefits was clouded by the drugs. He talked himself into believing that neither were a problem because he "just wanted to work." PIR ¶ 52. He knew deep down, however, that both were wrong yet did nothing to stop the cycle. Exhibit D.

Social security fraud investigators interviewed him in January 2011. The investigation evidently began years prior, in 2006, in large part due to the success and local notoriety of Pablo's Tacos. However, January 2011 was the first time he was confronted by law enforcement about working while receiving disability payments. PIR ¶ 11. At that time, he readily admitted his crimes

3

and said he wanted to make it right.  PIR ¶ 12.  He retained counsel and through counsel returned $1,219.00 that he received from social security in January 2011.  Mr. Fierro and counsel then met with the agents and the prosecutor in March 2011.  PIR ¶ 13.  Once again, he fully admitted his wrong doing.  PIR ¶ 14.  Reports reflect he made a $2,000 payment towards restitution through counsel in March 2011.

Shortly after this meeting, Mr. Fierro panicked about the prospect of a lengthy period - 20 years - of incarceration.  He left the country with his wife, leaving behind his children and assets. It all crumbled.  The properties and assets he owned went into foreclosure or were repossessed and he lost his share of the business to his partners.  PIR ¶¶ 14, 61. He was indicted about a year later, though the indictment was sealed and neither the defense attorney nor Mr Fierro's family was notified of its existence.

Mr. Fierro and his wife stayed in Mexico for about two and one-half years.  During this time, Mr. Fierro weaned himself off of the opiates. PIR ¶ 52.  This was a very difficult time physically and emotionally and he was suicidal at times during the detoxification period.  PIR ¶ 51.  He sought counseling for this suicidal ideation while in Mexico, and ultimately survived the detox period and has been completely opiate free since 2012.  PIR ¶ 52.

He and his wife decided to return to the United States in September 2014.  PIR ¶ 44.  He desperately missed his children and grandchildren - and they him.  He was finally healthy enough that he felt he could face the consequences of what he had done should it come to that.  His family here had no information that there was a warrant for his arrest, which was a surprise, but coming home to Muskegon was worth the risk to Mr. Fierro, regardless.  Evidently, the warrant on the indictment was not entered into the NCIC system so even though Mr. Fierro was traveling under his

true name with his true U.S. passport, he encountered no difficulty entering the country.

He moved in with his daughters in Muskegon and helped them at their respective restaurants upon his return. PIR ¶ 44. His daughter Maria owns La Casa Fierro, a restaurant in Muskegon, and his daughter Elizabeth owns Los Lagos Mexican Bar and Grill in Twin Lake. PIR ¶¶ 46, 55, 56. His return to Muskegon was no secret and he was visible to the many loyal restaurant customers, as well as being visible otherwise in the community. Upon his release from incarceration, he will continue to live with his daughters and work at their restaurants, as much as he is able so that he can make every effort ro generate funds to repay the government.

## MOTION FOR DOWNWARD VARIANCE

Mr. Fierro request the Court to consider variance from the guidelines. The Court needs no recitation of the factors it can consider under 18 U.S.C. § 3553(a).

With 163 days of presentence confinement, the Court could vary minimally from the guidelines and impose a sentence that now releases Mr. Fierro to supervision with the conditions outlined under the "Zone C" alternatives. The "at least one-half of the minimum term satisfied by imprisonment" requirement under § 5C1.(d)(2) would be satisfied by minimal variance from the 12-month low end range, because 163 days is approximately five and one-half months of imprisonment already served. Mr. Fierro asks the Court to consider that such a sentence would comply with the goals of sentencing and be sufficient but not greater than necessary under the circumstances.

## THE CHARACTERISTICS OF THE OFFENDER

We have attached numerous letters of support that we hope will give the Court some points of reference relative to the request for variance.

Exhibit A contains letters from Mr. Fierro's three adult daughters: Veronica Lopez, Maria

Briceno and Elizabeth Melgarejo.  They detail Mr. Fierro's love of family and devotion to church.  They also detail how he worked 16 hours per day when they were growing up so they could attend Catholic school and later pursue higher education, because as their father always said, "education and hard work always pay off."  They also describe the legitimate emotional and physical pain their father suffered , and continues to suffer, as a result of his back injury and his many contributions to family and community.

Exhibit B contains letters from those who have worked with Mr. Fierro in business and community.  Francis Attig, a fire fighter for Norton Shores, describes how Mr. Fierro and/or his daughters through their restaurants provide food for the Fire Prevention Open House each year, an event that attracts 1,200 or more people annually.  Benito Garz has written about Mr. Fierro's activism in the Catholic church and Hispanic community in Muskegon, volunteering his time, talents and food to various civic and church related events over the years.  Elvira Rodriguez teaches in the Muskegon Public Schools and  details how Mr. Fierro would provide work opportunities for those in need and provided her Bible study class with Bibles.  She also writes of how his children and grandchildren are model members of society, something that she attributes to the family stability created by Mr. Fierro and his wife over the years.  Harvey Anderson, Corbin Kingsbury, Kevin Marshall and Roy Flores all have conducted business with Mr. Fierro over the years and describe his work ethic, honesty and integrity in doing business, and how he and his family are highly respected fixtures in the Mexican food business in Muskegon.

Exhibit C contains a variety of letters from friends and family members that echo the above sentiments.  Mr. Fierro has clearly been a mentor, inspiration and "rock" for those who know him.  The theme of these letters is best summarized by family friend Laura Quezada who says: "Pablo is

a person of good moral character. I realize that might seem hard to believe, given the circumstances, but it's true nonetheless."

Exhibit D is Mr. Fierro's own letter to the Court.

Mr. Fierro is 66 years old. He has no prior criminal record. The same is true for his wife and children. His children are all educated and productive workers, and his grandchildren are on that same path. He is a devoted husband, father and grandfather. Family is the most important thing to him and because of his actions here, family is all that he has left.

He has worked hard his entire life, starting at a young age in Mexico and continuing through this offense and even to the present. Unlike many defendants the Court sees, he garners self-esteem and value from hard work. Providing for his family was his top priority, to the exclusion of other significant interests and hobbies. PIR ¶ 47. He also values education. He has modeled those values to his children and grandchildren, who are successful, contributing members of our community.

Unlike many who commit this type of fraud, his back injury is legitimate. It was really through sheer determination, and pain medication, that he was able to work full time, at first out of necessity and then later, in spite of his continued fraudulent receipt of benefits. Unlike many who commit this type of fraud, he was not sitting back, relaxing and being an unproductive member of society while collecting benefits: he continued to achieve and contribute. Also by sheer determination, he overcame a nasty opiate addiction - an addiction that clearly obscured his judgment relative to this case - and otherwise has no substance use issues.

In summary, the defense asks that the Court grant a downward variance from the 12-18 month guideline range. The amount of variance, of course, is up to the Court. The defense only asks that the Court consider that with 163 days of presentence confinement, the goals of sentencing can

be achieved by release to supervision with conditions at this time.

We recognize that the Court, as well as the government, may be concerned about variance in light of Mr. Fierro's flight to Mexico. Consequences flow from flight, we understand, but we suggest that consequences for negative behavior can be balanced with rewarding positive behavior here. Mr. Fierro's pre-trial detention was based solely on that flight. He has suffered the consequence of immediate, and lengthy, county jail incarceration as a result of his flight.

On balance with his flight are his two confessions. Just as surely as there are negative consequences for flight, surely it is reasonable to reward Mr. Fierro for admitting his wrong doing to law enforcement immediately when confronted in January 2011 and again in March 2011. His flight to Mexico delayed resolution of the case, but it did not hinder the investigation of the offense, which essentially ended once he confessed twice in 2011. Particularly regarding the uncounseled interview in January 2011, which was not proffer protected, we suggest to the Court that it is appropriate to reward Mr. Fierro for his thorough admissions by weighing it against his act of flight. A downward variance would reinforce his choice to answer questions in January 2011 without a lawyer and encourage others to do the same, something that is in the best interests of, and helpful to, law enforcement

For the reasons already stated, the defense submits that a downward variance is appropriate.

Dated: December 2, 2015

Respectfully Submitted,

WILLEY & CHAMBERLAIN LLP
Attorneys for Defendant

s/ Britt M. Cobb_____
Britt M. Cobb (P69556)
300 Ottawa Avenue, N.W., Suite 810
Grand Rapids, Michigan 49503
(616) 458-2212

8