UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      No. 1:12-cr-98

        vs.                              Hon. Robert Holmes Bell
                                         United States District Judge

PABLO RAZO FIERRO,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD VARIANCE**

      The United States opposes the defendant's request for a downward variance, and submits the following information for the Court's reference in determining an appropriate sentence in the above-captioned case.  In summary, the defendant stole nearly a quarter of a million dollars from U.S. taxpayers by feigning disability, lied to this Court to perpetuate his fraud, and fled to Mexico to avoid prosecution.  He deserves a sentence at the high end of the guideline range.

      1.      Facts and Procedural History:

      In 1971, the defendant entered the United States illegally, and was returned to Mexico.  (Presentence Report "PSR," ¶ 40.)  He later illegally reentered the United States again, settled in Chicago, Illinois, and later moved to Muskegon, Michigan.  (PSR ¶ 44.)  In 1996, the defendant filed an application for Social Security disability benefits, swearing that he had injured his back and was unable to work.  (PSR ¶¶ 9-10.)  After his claim was approved, he began receiving more than $1000 per month from the Social Security Administration (SSA) for himself and his dependent minor children.  (Attachment 1, schedule of benefits paid.)

In 1998, SSA conducted a continuing disability review, determined the defendant was able to work, and terminated his benefits. (1:01-cv-615, R.15: Memorandum in Support of Commissioners Decision, p. 1.) The defendant appealed that decision to an Administrative Law Judge (ALJ), who conducted a full evidentiary hearing in 2000. *Id.* The ALJ took testimony from physicians who examined the defendant, several of whom opined that there was nothing physically wrong with him that would prevent him from working. *Id,* pp. 2-10. At least one physician reported signs of "symptom magnification." (1:01-cv-615, R.15: Memorandum in Support of Commissioners Decision, p. 3.)

At the hearing, the defendant testified under oath that he had not worked full time since 1992, and only "tried" to work once in 1999. (Attachment 2: transcript of hearing, p. 4-5.) He concealed the fact that he was gainfully employed at the time at "El Camino Tacos" in Muskegon, where the managers paid him in cash so he could carry on his fraudulent civil litigation. (PSR ¶ 12; R.32: Defendant's Sentencing Memorandum, ID#143.) The ALJ found the defendant's claim of continuing disability was not credible, and upheld the determination that his benefits should be terminated. (PSR ¶ 10.)

The defendant appealed the ALJ's decision to this Court, Hon. Richard A. Enslen presiding. (1:01-cv-615, R. 1: Complaint.) Based primarily on his positive (but in hindsight, erroneous) assessment of the defendant's credibility, Judge Enslen reversed the ALJ's decision and reinstated the defendant's disability benefits. (1:01-cv-615, R.20: Opinion, pp. 9-10.) As a result, the defendant received a lump sum payment of $67,671 for 1999-2003, and resumed collecting between $13,574 and $27,428 per year until 2011. (Attachment 1, schedule of benefits paid; PSR ¶ 14.)

In 2004, the defendant incorporated and began operating "Pablo's Tacos," a Mexican restaurant in Muskegon. (PSR ¶ 14.) The defendant's business grossed approximately $87,000 per month, and employed approximately 50 individuals, including by the defendant's admission multiple undocumented aliens. *Id.* The defendant deliberately failed to disclose his gainful employment to SSA in order to continue receiving disability benefits. (R.21: Plea Agreement, ID#42.)

In 2008, the Muskegon Chronicle printed a two-page article and video profile of the defendant and "Pablo's Tacos," complete with a photograph of the defendant preparing food in the kitchen. (Attachment 3, p. 1). After SSA began investigating tips that the defendant was committing disability fraud, he participated in a proffer interview and plea negotiations at the U.S. Attorney's Office. (PSR ¶¶ 13, 15.) The government refused the defendant's demand for assurances that he would not face immigration consequences if it was determined he had falsified his citizenship application. He fled to Mexico rather than face prosecution. (PSR ¶ 15.)

A grand jury in the Western District of Michigan subsequently returned the indictment charging the defendant with disability fraud and theft of government funds, and a sealed arrest warrant was lodged. (R. 1: Indictment; R. 3: Motion and Order to Seal.) The defendant returned to the United States after checking with an undisclosed "family friend" to see if he had any active warrants[1], and was arrested earlier this year in Twin Lake, Michigan. (PSR ¶ 15.) After losing a detention hearing, the defendant agreed to plead guilty without further delay. (R.12: Minutes of Arraignment and Detention Hearing.)

---

[1] Because the warrant for the defendant's arrest was a sealed federal warrant, it would not have been visible to local law enforcement.

2.      Guideline Issues:

There are no unresolved guideline issues in this case. The parties agree that based on a total offense level of 13 and a criminal history category of I, the guideline imprisonment range is 12 to 18 months. (PSR ¶ 64.) As U.S. Probation correctly notes, the Court is required to use the guidelines in effect at the time of sentencing. (PSR ¶ 23; USSG § 1B1.11(a).) It should also be noted, however, that the fraud guideline applicable in this case (USSG § 2B1.1(b)(1)(F)) was lowered in 2015 to account for inflation. (Attachment 4). Had the defendant pled guilty and been sentenced in 2014 or earlier, he would have received two additional offense conduct levels for stealing between $150,000 and $250,000, rather than the 10 levels he is receiving now. *Id,* p. 2. The defendant is, in essence, receiving a windfall because he remained "on the lam" in Mexico long enough that inflation rendered the money he stole less valuable in today's dollars. The defendant actually stole the money between 1996 and 2011, however, when it was worth more. This irrational result should be addressed by selecting a higher sentence within the guideline range.

3.      Statutory Sentencing Factors:

The Court is required to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the court must consider, among other things:

> a.      *The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1)):*

While reckless endangerment during flight normally justifies a two-level upward departure, merely avoiding or fleeing from arrest is ordinarily not covered by the obstruction guideline. USSG § 3C1.1, application note 5; *United States v. Alpert,* 28 F.3d 1104, 1107 (11th Cir. 1994). This does not mean, however, that "such uncooperative conduct must go

4

unpunished." *United States v. Bliss,* 430 F.3d 640, 651 (2d Cir. 2005) (defendant fled the jurisdiction after learning he was under investigation.)  As the guidelines specifically suggest, such conduct can be punished by withholding credit for acceptance of responsibility, and "can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range."  USSG § 3C1.1, application note 3; *Bliss,* at 651.

The government does not oppose the defendant receiving credit for acceptance of responsibility in this case, because he did promptly agree to plead guilty after being apprehended in 2015.  A contrary result might actually discourage pleas in similar cases in the future, if defendants perceive they have already forfeited acceptance and have "nothing to lose" by insisting on an otherwise unnecessary trial.  On the other hand, fleeing the country to avoid prosecution should not be condoned.  For this reason, and the other reasons discussed below, the government requests a sentence at the top end of the applicable guideline range.

> b. *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A)):*

Defrauding the taxpayers of nearly a quarter of a million dollars is serious misconduct by any definition.  The way in which the defendant perpetrated the fraud, however, shows unusual disrespect for the law.  When SSA correctly determined the defendant was able to work, he had the temerity to appeal that decision to this Court while actually working – and arranging to be paid in cash – so he could continue to feign disability.   He lied to this Court under oath that he had not worked in years, and that he was unable to do so because of pain for which doctors could find no objective cause.  The defendant is apparently a charming and persuasive speaker, who convinced a compassionate judge to give his "credibility" greater weight than the opinions of several physicians.  The defendant has already hoodwinked the Court once, and should receive a

sentence that reflects the seriousness of lying to SSA and this Court to steal from his fellow citizens.

      *c.*      *The need for the sentence imposed to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B)):*

The crime the defendant perpetrated is exceptionally easy to commit, and exceptionally hard to stop. As the record demonstrates, all that is required to initiate fraudulent disability payments is the willingness to lie. Even where the government is willing to engage multiple expert physicians and spend years in protracted litigation to unmask a fraud, the willingness to perpetuate a brazen lie can trump objective, scientific evidence. The odds of being discovered are low; if the defendant had not advertised his scam in the Muskegon Chronicle, he might never have been caught. Even where a disability fraudster is eventually charged with a crime, the sentencing guidelines are surprisingly low. A short sentence for stealing hundreds of thousands of dollars may well convince others that the risks of attempting the same scam are worth the potential rewards.

For the foregoing reasons, the government requests the Court deny the defendant's motion for a downward variance, and impose a sentence at the high end of the applicable guideline range.

      Respectfully submitted,

      PATRICK A. MILES, Jr.
      United States Attorney

Dated: December 3, 2015        /s/ Nils R. Kessler
      NILS R. KESSLER
      Assistant United States Attorney
      P.O. Box 208
      Grand Rapids, Michigan 49501-0208
      (616) 456-2404